**CITY OF LAKEWOOD, Plaintiff,**

**v.**

**EL–HAYEK, Defendant.**

Lakewood Municipal Court,
Cuyahoga County, Ohio.

No. 06 D 2509.

Decided Dec. 29, 2006.

130

Regis E. McGann, Lakewood Prosecuting Attorney, for plaintiff.

Jones Day and Robert Ducatman, for defendant.

CARROLL, Judge.

{¶ 1} This case arises out of a collision between a car and a motorized scooter on a sidewalk. The defendant was charged with failing to yield the right of way to the person on the scooter in violation of Lakewood Codified Ordinances

("L.C.O.") 371.07. The defendant entered a plea of not guilty, and the case was scheduled for trial. The trial was commenced before the court. At the conclusion of the prosecutor's cases, the defendant moved for a judgment of acquittal pursuant to Crim.R. 29. The case is before the court on that motion.

{¶ 2} The facts in this case are taken from the testimony and other evidence presented at the trial. The facts set out are solely for the purpose of the pending motion for judgment of acquittal.

{¶ 3} The collision occurred on the sidewalk adjacent to the parking lot at the Huntington Bank on Detroit Avenue, Lakewood, Ohio. The defendant was attempting to drive out of the parking lot onto Elbur Avenue. The defendant stopped his car at the sidewalk before leaving the parking lot and entering onto the street. The defendant then proceeded forward onto the Elbur Avenue, colliding with Alban Vneshta, age 10, who was operating a motorized scooter on the sidewalk.

{¶ 4} The scooter was gas powered. Alban was operating the scooter on the sidewalk when he crossed the exit from the parking lot when the collision occurred. A single charge of failing to yield the right of way on a sidewalk was issued to the defendant.

{¶ 5} Section 371.07 of the Lakewood Codified Ordinances provides as follows:

The driver of any vehicle shall yield the right of way to any pedestrian on a sidewalk.

L.C.O. 371.07 is identical to R.C. 4511.441.

{¶ 6} The defendant raised numerous defenses at the trial. For the purpose of determining the motion for acquittal, the primary defense is that Alban was not a pedestrian within the meaning of the ordinance at the time of the collision. The issue, therefore, is the definition of a pedestrian as it relates to the duty of an operator of a motor vehicle.

{¶ 7} R.C. 4511.01(X) defines "pedestrian" as any natural person afoot. R.C. 4511.01(FF) defines "sidewalk" as that portion of a street between curbed lines, or the lateral lines of a roadway, and the adjacent property lines intended for the use of pedestrians.

{¶ 8} These statutory definitions, however, by themselves, are not dispositive of the issue. Although a sidewalk is defined in terms of use by a pedestrian, there are other lawful users of a sidewalk. R.C. 4511.711 permits and anticipates the operation of a bicycle on a sidewalk. A motor vehicle would also have the duty to yield to a bicycle on a sidewalk or crosswalk. A person confined to a wheelchair has the same protections as a pedestrian for the purpose of a duty of an operator

of a motor vehicle to yield the right of way on a sidewalk or in a crosswalk. R.C. 4511.491.

{¶ 9} When interpreting a statute, a court's principal concern is the legislative intent in enacting the statute. *State ex rel. Francis v. Sours* (1944), 143 Ohio St. 120, 124, 28 O.O. 53, 53 N.E.2d 1021. In determining that intent, "a court should consider the language used and the apparent purpose to be accomplished, and then such a construction should be adopted which permits the statute and its various parts to be construed as a whole and gives effect to the paramount object to be attained." *Humphrys v. Winous Co.* (1956), 165 Ohio St. 45, 49, 59 O.O. 65, 133 N.E.2d 780. Thus, the court must first look to the language of the statute itself to determine legislative intent. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 65 O.O.2d 296, 304 N.E.2d 378.

{¶ 10} A statute is ambiguous when its language is subject to more than one reasonable interpretation. *State v. Jordan* (2000), 89 Ohio St.3d 488, 492, 733 N.E.2d 601. When a statute is ambiguous, the court must look beyond the words of the statute and construe it in a manner that reflects the purpose of the General Assembly. *Cochrel v. Robinson* (1925), 113 Ohio St. 526, 149 N.E. 871. In determining the intent of the General Assembly, the court may consider the objective of the statute and the consequences of any particular construction. R.C. 1.49(A) and (E).

{¶ 11} In the present case, the statutory definitions involving a duty to yield to someone on a sidewalk must be reconciled with other portions of the traffic code. It is a fundamental rule of statutory construction that statutes relating to the same subject matter be construed in pari materia to be harmonized and to give full application to the statutes. *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 294, 649 N.E.2d 1205. See, also, *State ex rel. Comm. to Repeal Ordinance No. 146-02 v. Lakewood*, 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362. The various statutory provisions affecting a particular subject should be construed and applied to accomplish the manifest purpose of their enactment and give full force and effect to the legislative intent. *Thiel v. Allstate Ins. Co.* (1986), 23 Ohio St.3d 108, 111, 23 OBR 267, 491 N.E.2d 1121. The doctrine of in pari materia includes statutes relating to the same subject, even though enacted at different times. *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 58 O.O. 315, 132 N.E.2d 191. Thus, different sections of the traffic code should be read in pari materia. See, e.g., *Muenchenbach v. Preble Cty.* (2001), 91 Ohio St.3d 141, 742 N.E.2d 1128; *State v. Leichty* (1993), 68 Ohio St.3d 37, 623 N.E.2d 48.

{¶ 12} The duty to yield turns on the scope of protection afforded to a person on a sidewalk as well as the manner in which the sidewalk is being used.

See Annotation, Who is a Pedestrian Entitled to Rights and Subject to Duties Provided by Traffic Regulations or Judicially Stated (1985), 35 A.L.R.4th 1117. The mere use of a wheeled device for transportation does not exclude a pedestrian or deprive that person of the duty to yield by a motor vehicle. A person operating a bicycle was held to have the same protections as a pedestrian in *Schroeder v. Auto-Owners Ins. Co.*, Lucas App. No. L-03-1349, 2004-Ohio-5667, 2004 WL 2384350. The court of appeals in *Schroeder*, adopted a broader definition of a pedestrian:

"While it is true that a pedestrian is ordinarily understood to be one who travels on foot, nevertheless the mere circumstances, that he or she has attached to his or her feet roller skates, ice skates, or walks on stilts, uses crutches, or is without feet and propels himself or herself along, by means of a chair, or by some other mechanical device, does not clothe him or her, in a broad and general sense, with any other character than that of a pedestrian."

Id., ¶ 32, quoting *Eichinger v. Krouse* (1929), 105 N.J.L. 402, 405, 144 A. 638.

{¶ 13} The law in Ohio in this area is scant. A review of court decisions in other jurisdictions addressing the duty to yield to a person on a sidewalk or crosswalk is beneficial. A similar issue was addressed by the court in *Schallenberger v. Rudd* (1989), 244 Kan. 230, 767 P.2d 841. *Rudd* also involved a collision between a motor vehicle and a bicycle on a sidewalk. The court in *Rudd* found that the duty to yield the right of way was owed not only to pedestrians, but to bicycles, tricycles, skate boards, baby carriages, toy wagons, and wheelchairs. See, also, *Nish v. Schaefer* (2006), 2006 Wy. 85, 138 P.3d 1134.

{¶ 14} The majority of the cases reviewed by this court were civil in nature, involving liability for injuries. *Belay v. Dist. of Columbia* (2004), 860 A.2d 365, however, involved a conviction for failure to yield the right of way in a crosswalk in a collision between a motor vehicle and a bicycle. Similar to the Ohio statute, the ordinance involving a duty to yield was limited in its language to a pedestrian. In upholding the conviction, the court reasoned that because a person riding a bicycle in a crosswalk had the same rights as a pedestrian, the duty owed was the same as to a pedestrian. The appellate court in *Belay* rejected the narrow definition of a pedestrian, stating:

While the initial reading of D.C. Code 50-2201(a) seems to apply only to those persons on foot, such an interpretation would lead to an absurd result. On any given day, persons may traverse a crosswalk using different means of propulsion. In addition to people on foot, those in wheelchairs, on bicycles or skate boards or scooters may use a crosswalk. It would be contrary to public policy to read the statute so narrowly as to make it a crime for an operator of a motor vehicle to hit the person on foot using a crosswalk but not to hit the person in a wheelchair, or on a bicycle. All are equally vulnerable to a motor vehicle.

Accordingly, we conclude that a strict construction of this statute would lead to an absurd result by denying protection, for people utilizing crosswalks, against motor vehicles.

Id. at 368.

{¶ 15} As the present case is criminal in nature, the statute or ordinance defining the offense must be strictly construed against the state and liberally construed in favor of the accused. R.C. 2901.04(A). This rule of construction applies to misdemeanors as well as felonies. *State v. Conley* (1947), 147 Ohio St. 351, 34 O.O. 279, 71 N.E.2d 275. It is the penal nature of the law that is determinative, and this rule of statutory construction applies to both municipal ordinances and state statutes. *State v. Wood* (2000), 137 Ohio App.3d 623, 739 N.E.2d 410.

{¶ 16} The canon in favor of strict construction of criminal statutes is not an obstinate rule that overrides common sense and evident statutory purpose. The canon is satisfied if the statutory language is given fair meaning in accordance with the manifest intent of the General Assembly. *State v. Warner* (1990), 55 Ohio St.3d 31, 47, 564 N.E.2d 18.

{¶ 17} The person who collided with the defendant in the present case was operating a gas-powered motorized scooter at the time of the collision. The Ohio Revised Code does not define a motorized scooter. A motor vehicle is statutorily defined to expressly exclude a motorized bicycle. R.C. 4501.01(B) and 4511.01(B). A motorized bicycle is defined by R.C. 4501.01(L) and 4511.01(H) as a device capable of being pedaled and equipped with a helper motor. The motorized scooter in this case had no pedals and therefore would not be included in this definition. Moreover, a motorized bicycle is limited in use to someone at least 14 years old with a valid probationary license. Similarly, a motor scooter, which is included in the statutory definition of motorcycle, does not apply to the motorized scooter at issue in this case. R.C. 4511.01(C).

{¶ 18} Upon review of the Ohio Traffic Code, as well as cases construing the duty of an operator of a motor vehicle to yield to a person on a sidewalk or crosswalk, absent a specific statutory exception, such as a motorized wheelchair (R.C. 4511.491), the common element is a device propelled by human power. This conclusion is consistent with the inclusion of a bicycle, which is defined as propelled by human power. R.C. 4501.01(K) and 4511.01(G). It is also consistent with the statutory definition of a motor vehicle, which includes a vehicle "propelled or drawn by power other than muscular power." R.C. 4501.01(B) and 4511.01(B). The conclusion that a device must be human powered to fall within the scope of a pedestrian is also consistent with the statutory definition a person

afoot. The motorized scooter in the present case is capable of movement solely by its gas-powered motor without human assistance.

{¶ 19} The Ohio Traffic Code, R.C. Chapter 45, provides specific authorization for a bicycle to operate on a sidewalk or bike path to the exclusion of a motor vehicle. R.C. 4511.711 and 4511.713. There is no such general statutory authorization for other motorized vehicles. Although an electric personal assistive mobility device may be operated on a sidewalk,[1] the same statute specifically imposes a duty "to yield the right-of-way to all pedestrian and human powered vehicles at all times." R.C. 4511.512(B)(1). This duty to yield is also consistent with the statutory purpose of creating separate classes of transportation by human-power and motorized vehicles.

{¶ 20} The motorized scooter is an unclassified and unregulated vehicle. Although there is no evidence of the speed at the time of the collision, the scooter is capable of speed up to 30 miles per hour. There are no restrictions for the age of an operator and no requirements for lights, horns, or other safety equipment. As an unclassified vehicle, its use is neither permitted nor restricted on a public sidewalk.

{¶ 21} The best solution to this issue would be for the General Assembly to address the legal status of an operator of a motorized scooter.[2] Meanwhile, however, the court must act within the confines of the traffic code. As the ordinance must be strictly construed, the court must not extend the scope of the ordinance by implication to cases not falling within its terms. *Cleveland v. Jorski* (1944), 142 Ohio St. 529, 27 O.O. 464, 53 N.E.2d 513.

{¶ 22} Based on the foregoing, the court finds that the operator of a motorized scooter does not fall within the definition or scope of "pedestrian." Accordingly, the court finds that the defendant's motion for acquittal is well taken.

{¶ 23} Even assuming that an operator of a motorized scooter could be considered a pedestrian for purposes of the ordinance, the right of way of a pedestrian is not absolute. R.C. 4511.01(UU) defines the right of way as follows:
> The right of a vehicle, streetcar, trackless trolley, or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle, streetcar, trackless trolley, or pedestrian approaching from a different direction into its or the individual's path.

---

1. The "Electric Personal Assistive Mobility Device" is commonly known by its trade name of "Segway." R.C. 4501.01(TT)

2. H.B. 18 was introduced on January 25, 2005. The purpose of this bill is to define and regulate the use of motorized scooters, including driver age and speed limitations.

While an operator of a motor vehicle must generally yield the right of way to a pedestrian, a pedestrian may not suddenly leave the curb or some other place of safety and walk or run into the path of the motor vehicle. R.C. 4511.46(B).

{¶ 24} In the present case, there was no evidence that the person on the motorized scooter stopped or slowed down as he approached the parking-lot exit on the sidewalk. In his own statement, the motorized-scooter operator admitted seeing the defendant's car approaching the exit to the parking lot as he drove his gas-powered scooter in front of it.

{¶ 25} Upon review of the record, the court finds that there was insufficient evidence to prove beyond a reasonable doubt that the defendant failed to yield the right of way. For the foregoing reasons, the motion for acquittal is granted.

So ordered.