P. THOMAS THORNBRUGH, VICE-CHIEF JUDGE:
¶ 1 Plaintiff, Mindy Michelle Smith, appeals from an adverse verdict in a personal injury action resulting from an automobile-bicycle collision at the intersection of South 109th East Avenue and East 71st Street in Tulsa. The jury found that Plaintiff was 80% at fault for her own injury and that Defendant, Tiffany Angel Barker, the driver of the pick-up truck that hit Plaintiff, was 20% at fault.
¶ 2 In this appeal, Plaintiff criticizes the court's failure to give the negligence per se instructions she submitted. Plaintiff claims that as a result the jury was, at best, uninformed, or at worst, misled, as to the law governing the duty of a motor vehicle to yield to a pedestrian/bicyclist[1] who was lawfully in *329 a marked crosswalk protected by a control signal.
¶ 3 Plaintiff contends the questions of (1) which party had the right-of-way,[2] and (2) who had the duty to yield to the other in the case of a collision between a pedestrian/bicyclist and the operator of a vehicle in a traffic light-controlled crosswalk, were the main issues to be decided by the jury. She also argues that the failure of the court to provide appropriate instructions of law concerning the relative rights and responsibilities of the parties constituted reversible error.
¶ 4 Under the facts and circumstances of this case, for the reasons discussed at length below, we decline to hold that the trial court specifically erred by rejecting Plaintiff's proposed negligence per se instructions as submitted . We find the existence of fundamental error, however, and return this case to the trial court for a new trial because there was a failure to instruct correctly on the law regulating the legal duties and rights of a "pedestrian/bicyclist" at a controlled crosswalk, as specifically dictated by 47 O.S.2011 § 11-203. If the trial judge does not accurately state the law, " 'fundamental error' occurs." Sellars v. McCullough , 1989 OK 155, ¶ 9, 784 P.2d 1060.
BACKGROUND FACTS
¶ 5 In her petition, Plaintiff asserted a cause of action for negligence. She alleged that Defendant, who was driving a Ford Ranger pick-up truck, executed a right turn on red and collided with Plaintiff while Plaintiff was in a marked crosswalk. Plaintiff claimed she sustained a fractured ankle along with other injuries as a result.
¶ 6 Plaintiff specifically alleged that Defendant was negligent per se because she was in violation of 47 O.S.2011 § 11-202(3)(b), which requires that a driver of a vehicle that is turning right on a steady red light indication "shall yield the right-of-way to pedestrians lawfully within an adjacent crosswalk ...." (emphasis added). Plaintiff's claim of negligence per se and the theory of her case never changed as the case progressed to trial. The agreed pre-trial conference order entered by the court contains the clear claim that Plaintiff had proceeded into the crosswalk with a "walk" signal when Defendant, who was executing a right turn on red from South 109th East Avenue to 71st Street, collided with Plaintiff in the crosswalk. Plaintiff's listed theory of recovery included negligence per se pursuant to 47 O.S. § 11-202(3)(b).[3]
¶ 7 Defendant's affirmative defense of contributory negligence at trial was based on Plaintiff's alleged violation of 47 O.S.2011 § 11-203, which provides that pedestrians proceeding across a road at the direction of a signal indicating "walk" have the right-of-way in the direction of the signal, but may not proceed to cross the road if the light displays "wait" or "don't walk."[4] Defendant claimed that Plaintiff carelessly operated her bicycle in front of Defendant's vehicle before Plaintiff had an illuminated "walk" signal allowing her to safely cross South 71st Street.
¶ 8 The parties' respective theories of the case remained the same at trial. While the evidence was undisputed that Plaintiff was in the crosswalk when she was hit,[5] Defendant disputed whether Plaintiff had properly entered the crosswalk at the direction of the control light, thus contributing to her own *330 injury. On July 26, 2017, this Court held oral argument on this case, which assisted in clarifying the issues for appeal.[6]
I. THE EVIDENCE AT TRIAL
¶ 9 In order to assess the adequacy of the jury instructions, we must examine the evidence adduced at trial in some detail. Three witnesses gave fact testimony at trial concerning the circumstances of the accident itself: Plaintiff, Defendant, and a non-party, Tyran Parrish, who was identified as the driver of a vehicle waiting for the light to change just east of the subject intersection. Their testimony, set forth in the trial transcript, is summarized here:[7]
A. Testimony of Plaintiff
¶ 10 Plaintiff testified that on the morning of October 4, 2012, she had ridden her bicycle on the sidewalk along the north side of East 71st Street to an off-ramp at Highway 169, where she dismounted. Plaintiff then walked her bicycle on the sidewalk to the corner of 71st Street and South 109th East Avenue.
¶ 11 According to Plaintiff, when she arrived at the corner, a "do not walk" signal was illuminated, so she pushed the button for a "walk" signal located in a yellow box mounted on a light pole. While she was waiting for the crosswalk signal with her bicycle, Plaintiff testified that she observed Defendant, who was driving a white Ford Ranger pick-up truck, stopped at a red light waiting to make a right turn from the lane located in front of Plaintiff. Plaintiff said she and Defendant made eye contact with each other. Plaintiff testified she waited for the crosswalk light for between 30 to 60 seconds.
¶ 12 Plaintiff testified that, after the crosswalk light displayed a "little man walking" signal, she proceeded to get on her bicycle and was in the process of riding across 71st Street, in the crosswalk, when she was struck by Defendant, who was going very slowly, as though she had just started up.
B. Testimony of Defendant
¶ 13 Defendant did not dispute Plaintiff's description of where the accident occurred. Defendant admitted that she was proceeding south on 109th East Avenue when she stopped for a red light and then waited for up to a minute looking left waiting for traffic to clear so that she could make a right turn onto 71st Street. Defendant testified that when she first approached the intersection she looked right, didn't see anyone, and then looked left waiting for the traffic to clear. According to Defendant, when she got an opening in traffic she "let off my brake to merge into traffic, and then that's when Ms. Smith appeared right in front of me " (emphasis added).
¶ 14 Defendant admitted that the light facing her was showing steady red at the time she made her right turn, and that she indeed struck Plaintiff with her vehicle while Plaintiff was in the crosswalk with her bicycle . While admitting it was "not OK to hit somebody in a crosswalk," she testified she had no fault whatsoever for the occurrence because she never saw Plaintiff the one time she looked. Defendant testified, "If I were to have looked to the right and saw Ms. Smith there I would have stopped " (emphasis added).
C. Testimony of Tyran Parrish
¶ 15 Tyran Parrish, who was sponsored as a witness to the collision, was driving west on 71st Street when she stopped at the intersection, waiting for the red light to change. She testified that she thought she had been there about for about a minute before the accident occurred.
¶ 16 Parrish testified she had seen Plaintiff riding her bicycle on the sidewalk but not the roadway. Parrish testified she saw the bicycle *331 stop within a foot or two of where Plaintiff entered the street, but was unable to testify that she saw the bicycle come off the curb into the crosswalk because Defendant's vehicle blocked Parrish's view.
¶ 17 Parrish testified that she did not know how long Plaintiff had stopped before the accident, because the next time she saw her, Plaintiff was in front of the Defendant's vehicle. While Parrish was unable to testify whether Plaintiff was in the crosswalk when she got hit, she did see Plaintiff lying in the street, screaming and grabbing her leg. Parrish did not know if Plaintiff pushed the "walk" signal, and she did not observe whether the "walk" signal was illuminated at the time of the occurrence.
II. THE ISSUES AT TRIAL
¶ 18 It is the duty of the parties to assure that the instructions given accurately reflect the issues tendered by the evidence adduced at trial. Sellars , 1989 OK 155 at ¶ 9, 784 P.2d 1060. It is the trial court's duty "to state the law correctly, but not to frame the issues." Id . ; see also Mosley v. Truckstops Corp. of America , 1993 OK 79, ¶ 9, 891 P.2d 577.
¶ 19 At the conclusion of Plaintiff's presentation of evidence, Defendant moved for a directed verdict, which the court overruled.[8] The recorded colloquy between counsel in their argument to the court is useful in understanding how the parties framed the issues in relationship to the testimony presented:
MR. GOODMAN [Defendant's counsel]: Your Honor, at this time Plaintiff, having rested, we would enter [sic] a directed verdict based upon the fact that the Plaintiff has failed to prove that my client breached her duty as a driver. Specifically the Plaintiff has failed to adduce evidence that at the time Ms. Smith crossed the crosswalk that my client was in the wrong for having proceeded forward by turning right. And, more specifically, the fact that at the time the Plaintiff was in the crosswalk that she had a walk sign versus my client's legal ability to make a right at the time. So with that, your Honor, we would enter [sic] a directed verdict.
THE COURT: Response, Mr. Rode?
MR. RODE [Plaintiff's counsel]: Your Honor, the testimony has been clear that the Defendant took a right on a red. The testimony has been clear that the Plaintiff was next to the button to push the walk sign and that she sat there for an extended period of time after pushing the walk sign. She got a walk sign and she crossed when she was struck by the Defendant entering the intersection on a red.
THE COURT: I believe there is sufficient evidence to go to the jury that there is a disputed fact and I will overrule the motion for directed verdict.
¶ 20 At the end of the presentation of the evidence, the record suggests that the question of fact (framed by the evidence), which the jury had to answer, was whether Plaintiff had entered the crosswalk before or after the walk signal illuminated. Defendant's other possible theory-that Plaintiff had ridden directly from the sidewalk into the crosswalk without stopping-was not supported by testimony.[9] There was simply no objective evidence to support the existence of any other disputed fact, because it was admitted by Defendant that Plaintiff was in the crosswalk when she was struck by Defendant, who was turning right on red at the time she began her turning maneuver.
III. THE REQUESTED NEGLIGENCE PER SE INSTRUCTIONS
¶ 21 Following the court's denial of Defendant's motion for directed verdict, the court made its record on the parties' requested instructions. Each of the parties had submitted instructions on negligence per se.
¶ 22 Defendant had requested a negligence per se instruction based upon a City of Tulsa ordinance on business districts, which Defendant argued made it unlawful for Plaintiff to *332 ride her bicycle on a sidewalk at or near the location of the accident.[10] Plaintiff had requested various instructions in support of her negligence per se claim that Defendant had violated general state and municipal rules of the road, and specifically a state statute that required Defendant to yield the right-of-way to "pedestrians" within a crosswalk while turning right on a steady red light.[11]
¶ 23 The court declined to give a negligence per se instruction for either party, stating as follows:
THE COURT: ... I have given some consideration to what the issues are in this case, and I am going to not give any negligence per se instruction either way. I believe there are issues of disputed fact about what the facts were leading up to this accident and where everyone was and what they did in this accident, and it's a jury question and .... would not be proper to give a negligence per se instruction.
In specifically addressing Plaintiff's requested per se negligence instructions, the court also noted:
THE COURT: Okay. And, Mr. Rode, your negligence per se had to do with various duties of drivers, pedestrians and bicyclists which I believe are covered in the general instructions, particularly the 10.1 and 10.2, etc., that I am including in the jury instructions.[12]
The trial transcript documents that Plaintiff preserved her objections on the record, and Defendant did not.[13]
STANDARD OF REVIEW
¶ 24 We review given or refused jury instructions to determine if there is a probability that the jurors were misled and reached a conclusion they would not have reached but for the questioned instruction, or "if there was excluded from consideration a proper issue of the case." Lee v. Cotten , 1990 OK CIV APP 48, ¶ 7, 793 P.2d 1369 (emphasis added) (citing Ankney v. Hall , 1988 OK 101, 764 P.2d 153 ; and Woodall v. Chandler Material Co ., 1986 OK 4, 716 P.2d 652 ).
¶ 25 In addressing alleged errors in jury instructions, we must consider whether the instructions as a whole fairly and accurately state the applicable law. Dutsch v. Sea Ray Boats, Inc ., 1992 OK 155, 845 P.2d 187. We may not set aside a verdict for misdirection of the jury unless the error has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right. 20 O.S.2011 § 3001.1.[14]
ANALYSIS
I. NEGLIGENCE PER SE
¶ 26 Plaintiff contends the trial court erred by refusing to allow five negligence per se jury instructions that she had requested.
*333 These included instructions for violations of 47 O.S.2011 § 11-901b (Full Time and Attention to Driving); 47 O.S. § 11-504 (Drivers to Exercise Due Care); Tulsa Revised Traffic Code, Title 37 § 645 (Inattentive Driving); Tulsa Revised Traffic Code, Title 37 § 613 (Starting and Stopping); and 47 O.S.2011 § 11-202 (Traffic Control Signal Legend).
¶ 27 Negligence per se is a term used when a duty of care is based upon a violation of specifically prescribed conduct required by a statute. "When courts adopt the statutory standard for a cause of action for negligence ... the violation of [the] statute constitutes negligence per se if the other elements of negligence are present." Mansfield v. Circle K. Corp ., 1994 OK 80, ¶ 6, 877 P.2d 1130.
¶ 28 Plaintiff correctly points out that to establish negligence per se on the basis of a statutory violation, a party must show that (1) the injury was caused by the statute's violation; (2) the injury was of the type intended to be prevented by the statute, and (3) the injured party was a member of the class meant to be protected by the statute. See Hamilton v. Allen , 1993 OK 46, ¶ 9, 852 P.2d 697 ; Ohio Cas. Ins. Co. v. Todd , 1991 OK 54, ¶ 8, 813 P.2d 508.
¶ 29 As a general rule, the violation of a statutory duty imposed for the protection of person or property constitutes negligence per se. Breno v. Weaver , 1952 OK 407, 208 Okla. 14, 252 P.2d 487. However, the standard of duty must be fixed and defined by law and be the same in all circumstances . Chicago R.I. & P. Ry. Co . v. Pitchford , 1914 OK 79, 44 Okla. 197, 143 P. 1146 (Court Syllabus). A negligence per se instruction is not appropriate where the terms of the statute do not impose positive objective standards. Determination of whether conduct measures up to the standards of conduct enjoined by the statute depends on the conditions and circumstances proved, and requires evaluation of the evidence. The issue then is one of negligence, not negligence per se. See Wade v. Reimer , 1961 OK 44, ¶ 5, 359 P.2d 1071 (involving a statute requiring that a vehicle be operated at a careful and prudent speed not greater nor less than is reasonable and proper).
¶ 30 We have reviewed all five of Plaintiff's requested negligence per se instructions and find that four of them do not properly support the giving of a negligence per se instruction, because the statutory duties imposed upon the operator of a vehicle are undefined or defined only in abstract general terms.
¶ 31 We therefore find that the court's refusal to give the proposed negligence per se instructions, as submitted by the parties, is free from error.
II. PLAINTIFF'S "CROSSWALK" INSTRUCTION
¶ 32 Plaintiff contends that the evidence at trial mandated the giving of her proposed negligence per se Instruction No. 9.10-c-modified, based upon 47 O.S. § 11-202 (Traffic Control Signal Legend), since it was her theory that she had the right-of-way (the privilege to use the roadway) when she lawfully entered the light-controlled crosswalk, and that Defendant had the statutory duty to yield the right-of-way to Plaintiff. Plaintiff's argument here is not without some merit, since this was the only proposed instruction with specific application to the duty of a vehicle to yield the right-of-way, while turning right on a steady red light, to a pedestrian (and to other traffic) lawfully within an adjacent crosswalk.
¶ 33 Before we can conclude, however, that it was reversible error for the court to refuse to give this instruction, some extended analysis is required. In addition to being applicable to the issues framed, an instruction must be correct in form and in substance. Mosley v. Truckstops Corp. of America , 1993 OK 79, ¶ 9, 891 P.2d 577 ; Timmons v. Royal Globe Ins. Co. , 1982 OK 97, 653 P.2d 907.
¶ 34 We cannot ignore or overlook the fact that the instruction, as submitted, was not in the proper form because it did not directly address how Oklahoma traffic laws apply to a bicyclist, such as Plaintiff, who, after either riding her bike on a roadway occupied by vehicles, or on a sidewalk used by pedestrians, uses a pedestrian crosswalk to access an *334 adjoining sidewalk or simply cross an intersection. Under Oklahoma law, a bicycle is not a "pedestrian" and the term "other traffic lawfully using the intersection" as contemplated by the statute is ambiguous. This should have been sufficient to alert the parties and the trial court of the need to craft instructions that would allow the jury to properly assess Plaintiff's theory of the case: that it was the duty of Defendant, as operator of the vehicle turning right on a steady red light, to yield the right-of-way to a pedestrian/bicyclist lawfully in a crosswalk. Without modifying the proposed instruction, the jury could not know whether a bicyclist was entitled to the same protection under the statute as a pedestrian under similar circumstances.
¶ 35 Plaintiff, however, did not ask the court to further modify the instruction, and the court did not do so on its own initiative. Without the benefit of the court's direction, the question of whether Oklahoma law afforded Plaintiff, as a bicyclist, the same legal privilege possessed by a pedestrian while lawfully in the crosswalk, would remain unanswered.[15]
A. The Legal Status of a "Pedestrian-Bicyclist"
¶ 36 Assessing this question, we note that a bicyclist in a crosswalk is as vulnerable if struck by a vehicle as a pedestrian in the same situation, and, rationally, is in need of the same protection. As reasoned by the District of Columbia Court of Appeals:
It would be contrary to public policy to read the statute so narrowly as to make it a crime for an operator of a motor vehicle to hit the person on foot using a crosswalk but not to hit the person in the wheelchair, or on the bicycle. All are equally vulnerable to a motor vehicle. Accordingly, we conclude that a strict construction of this statute would lead to an absurd result by denying protection, for persons utilizing crosswalks, against motor vehicles.
Belay v. D.C. , 860 A.2d 365, 368 (D.C.Ct.App. 2004).
¶ 37 The Supreme Court of Washington noted a similar telling hypothetical involving a group of children, "some on foot, others on skateboards, roller blades and bicycles," who wait at a crosswalk until the walk signal shows:
If such group were hit in the crosswalk, under [defendant's] interpretation, the vehicle driver would be liable to all children except those on bicycles. Such interpretation and result make no sense.
Pudmaroff v. Allen , 138 Wash.2d 55,977 P.2d 574, 579 (1999).[16]
¶ 38 In Schallenberger v. Rudd , 244 Kan. 230, 767 P.2d 841, 844 (1989), the Kansas Supreme Court construed that state's crosswalk laws to hold that users of "bicycles, skateboards, tricycles, wheelchairs, baby carriages, toy wagons, and other human-powered conveyances" in crosswalks have "the same rights as pedestrians, to which a vehicle turning right on a red light after a complete stop must yield the right-of-way." More recently, in Kendrick v. Manda , 38 Kan.App.2d 864, 174 P.3d 432, 437 (2008), the Court noted that Schallenberger was still good law, and that, although cyclists using the road are subject to the rules for vehicles, cyclists using a crosswalk are subject to the rules for pedestrians.
¶ 39 We find the rationale of these cases persuasive. The users of "bicycles, skateboards, tricycles, wheelchairs, baby carriages, toy wagons, and other human-powered conveyances" in a crosswalk are equally at risk and in need of protection from motor vehicles. We find that, in this case, Plaintiff had the same legal status, duties, and protections as a pedestrian using the crosswalk.
*335 III. THE COURT INSTRUCTIONS INCORRECTLY STATED THE LAW REGARDING CONTROLLED CROSSWALKS
¶ 40 Title 47 O.S.2011 § 11-203 specifically addresses the duties and rights of a pedestrian attempting to use a controlled crosswalk as follows:
Whenever special pedestrian-control signals exhibiting the words "Walk" or "Wait" or "Don't Walk" are in place, such signals shall indicate as follows:
1. Walk. Pedestrians facing such signal may proceed across the roadway in the direction of the signal and shall be given the right of way in the direction of the signal by the drivers of all vehicles.
2. Wait or Don't Walk. No pedestrian shall start to cross the roadway in the direction of such signal, but any pedestrian who has partially completed his crossing on the walk signal shall proceed to a sidewalk or safety island while the wait signal is showing.
¶ 41 The rights and duties set forth in this statute form the basic case theory of both Plaintiff and Defendant. Plaintiff claims that she entered the crosswalk pursuant to a "walk" signal. If so, Plaintiff had the legal right-of-way. The collision of a vehicle with a pedestrian in these circumstances is clearly the type of harm the statute seeks to avoid, and Plaintiff is within the class of persons intended to be protected by the statute. Thus, failure to grant Plaintiff the right-of-way may constitute negligence per se.[17]
¶ 42 Defendant's theory was that Plaintiff entered the crosswalk while the signal displayed "don't walk." The statute specifically forbids such actions, and its purpose is clearly to prevent a collision between a vehicle and a pedestrian by limiting the times the pedestrian may cross. Thus, Plaintiff entering the crosswalk while the light signaled "don't walk" may also constitute negligence per se. We find it clear that Oklahoma's statutory law creates a regime governing the behavior of vehicles and pedestrians at a controlled crosswalk that is different, and more specific, than the general duties of vehicles and pedestrians in an open-road situation.
¶ 43 Plaintiff, in addition to complaining that the court erred in excluding her proposed negligence per se instructions, asserts that the instructions as given were inadequate and thereby misled the jury because they failed to inform the jury of the statutory duty imposed upon a driver to yield the right-of-way to a person operating a bicycle lawfully within a crosswalk. We agree. The key instructions given by the court in this case were Instruction Nos. 4, 13, 14, 15 and 16:
INSTRUCTION NO. 4
The Parties admit:
On or about October 4, 2012, the Plaintiff was attempting to ride her bicycle across the northwest side of the intersection of 71st Street and 109th East Avenue, in the City of Tulsa, Tulsa County, going eastbound [sic] when she was struck by the Defendant who was attempting to turn right on a red light. The Defendant's vehicle was moving at the time the collision occurred. The Defendant did not see the Plaintiff before the collision. ...
INSTRUCTION NO. 13
It is the duty of the driver of a motor vehicle and a pedestrian to use ordinary care to prevent injury to themselves or other persons.
INSTRUCTION NO. 14
It is the duty of every operator of a vehicle to exercise ordinary care in keeping a lookout consistent with the safety of other vehicles/persons.
INSTRUCTION NO. 15
The driver of an automobile having the right-of-way must exercise ordinary care and operate her vehicle with due regard to existing conditions. She is entitled to assume that her right-of-way will be respected, *336 until she has warning, notice or knowledge to the contrary. If the situation is such as to indicate to a reasonably careful person in her position that to proceed would probably result in a collision, then she should exercise ordinary care to prevent an accident, even to the extent of yielding her right of way.
INSTRUCTION NO. 16
A bicycle operator having the right-of-way must exercise ordinary care and operate her bicycle with due regard to the existing conditions.
¶ 44 Instructions are explanations of the law of a case which enable a jury to arrive at a correct conclusion. The instructions need not be ideal, but they must reflect the Oklahoma law regarding the subject at issue. Mosley , 1993 OK 79 at ¶ 18, 891 P.2d 577. Title 12 O.S. §§ 577 and 577.2 place an affirmative duty upon the court to give instructions accurately reflecting the law as to the issues presented.
A. The Instructions Were Legally Incorrect
¶ 45 We note, first, that the court's introductory statement of the issues in the case, Instruction No. 4, does not advise the jury that the parties were in agreement that Plaintiff was in a crosswalk when she was struck by Defendant, or indeed even that the accident occurred in a crosswalk. Further, and most crucially, the jury was never instructed on the specific statutory law regarding controlled crosswalks. The basic issue in both parties' arguments was whether Plaintiff did or did not have a "walk" light when she entered the crosswalk.
¶ 46 After our review of the evidence at trial, we find the instructions given to the jury, as a whole, failed to accurately state the law regarding the crucial issue of who had the right-of-way. The four "general duty" instructions given by the court, Nos. 13, 14, 15, and 16, made no mention of the central fact that the right-of-way of each party was dependent upon the status of the "walk" or "don't walk" light. It is entirely probable that the jury as instructed would conclude that the parties had equal rights-of-way, which is not the case pursuant to 47 O.S.2011 § 11-203. The instructions as a whole did not fairly present the law applicable to the issues raised by Plaintiff, or the law set out in § 11-203. As such, the matter must be returned to the trial court for a new trial.
B. Jury Instructions on Remand
¶ 47 Given that the issue presented here is not currently covered by an existing uniform jury instruction, we make the following observations for the assistance of the trial court on remand regarding potential instructions. As previously noted, the current law refers separately to pedestrians, bicyclists, and motor vehicles, but this case involves what has been described as a "pedestrian/bicyclist." We have held that, in this situation, a bicyclist has the same status as a pedestrian when using the crosswalk, and the jury should be so instructed if necessary.
¶ 48 The situation here is that of a controlled crossing with illuminated signals indicating when it is proper to walk or not walk. As we have previously noted, the Oklahoma statutes were amended to address the relative rights of pedestrians and vehicles at a controlled crosswalk in a 1961 addition to Title 47, quoted above in § 11-203. Title 47 O.S. § 11-502 further provides, "(b) No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."
¶ 49 Using these clear statutory principles as a guide, the court must first determine if there is a question of fact as to the status of the walk signal in this case. If a question of fact exists, the jury must first determine whether the light signal for "walk" was illuminated when Plaintiff entered the crosswalk. If the court finds there is a question as to whether the "walk" signal was illuminated when Plaintiff entered the crosswalk, a jury instruction pursuant to 47 O.S. § 11-203(1) (modified) would be appropriate. If the court finds that a question exists as to whether a "wait" or "don't walk" signal was illuminated *337 at the time Plaintiff entered the crosswalk, an instruction pursuant to 47 O.S. § 11-203(2) would be appropriate, as would any other combination of instructions modified to reflect these statutory principles. If there is any evidence to support a defense that Plaintiff departed the curb in a manner that made it impossible for Defendant to comply with her duty to yield pursuant to § 11-203, an instruction based on 47 O.S. § 11-502(b) (modified) would also be appropriate.
CONCLUSION
¶ 50 The decisive questions of fact presented for the jury's determination in this matter were (1) which party had the right-of-way and (2) which party had the duty to yield in the case of a collision between a vehicle and a pedestrian/bicyclist in a signal-controlled crosswalk. While the trial court did not err in rejecting the specific negligence per se instructions submitted by Plaintiff, there was nonetheless a failure to give the jury an instruction on the central theory of the case. The instructions thus did not properly present the law applicable to the issues raised by the parties. As a result, the jury was likely misled and reached a different result than it would have if it had been properly instructed. Accordingly, the trial court's judgment is reversed, and this matter is remanded for a new trial.
¶ 51 REVERSED AND REMANDED FOR NEW TRIAL .
BARNES, P.J., and WISEMAN, J., concur.

The term "pedestrian-bicyclist," which appears in the parties' briefing and in this opinion, is not defined in Oklahoma statutes nor are there any reported Oklahoma cases which would aid the trial court in instructing on the rights and duties of a "pedestrian-bicyclist" while in a marked cross-walk. Oklahoma statutes do, however, define the terms, "bicycle" and "pedestrian," as follows:
-Title 47 O.S.2011 § 1-104 defines bicycle as "a device upon which any person or persons may ride, propelled solely by human power through a belt, chain, or gears, and having two or more wheels, excluding mopeds."
-Title 47 O.S.2011 § 1-143 defines pedestrian as "[a]ny person afoot."

Title 47 O.S.2011 § 1-156 defines right-of-way as "[t]he privilege of the immediate use of the roadway."

See Pre-trial Conference Order filed August 4, 2015. Record at 62-75.

The City Ordinance cited as authority by Defendant also provided that any pedestrian who has partially completed his/her crossing shall be allowed to proceed.

Defendant agreed that when her vehicle struck Plaintiff, Plaintiff was in the crosswalk.

At oral argument, Defendant made clear that the sole theory of defense argued at trial was that Plaintiff entered the crosswalk with her bicycle before the "Walk" light was illuminated.

The transcript does not include the testimony of two other witnesses who presumably testified as to Plaintiff's injury; and it does not include closing statements which are often useful to a reviewing court in measuring the full degree of possible prejudice to Plaintiff in light of the entire trial, including the allegations of the petition, conflict in the evidence on critical issues, and arguments of counsel.

This is not an issue on appeal.

Defendant had no evidence to offer on this point, other than an inference that the reason she did not see Plaintiff on the corner was because Plaintiff was not there.

Throughout the case, Defendant argued the accident had occurred in a "business district" and that City of Tulsa Municipal Code, Chapter 10, Section 1009 prohibited the operation of a "bicycle, rickshaw or motorized scooter upon a sidewalk within a business district." See Defendant's Exhibit 2, Record at p. 55. There was no evidence at trial that the location in question was a business district as defined by the ordinance. Defendant did not object to the court's refusal to give the instruction at trial.

Plaintiff objected to the court's failure to give her proposed instructions, including requested Instruction No. 9.10-c, setting forth 47 O.S. § 11-202 (3)(b), requiring vehicular traffic turning right on a steady red to yield the right of way to pedestrians lawfully within an adjacent crosswalk.

It is this finding in particular that leads to our discussion later in this opinion that the parties' conflicting testimony required a specific instruction about the legal duties of each party under the circumstances. See Lindemann v . Randolph , 1965 OK 211, 414 P.2d 257.

Failure of a defendant to object at trial results in a waiver of any specific objection thereto. See Sellars v. McCullough , at ¶ 1.

Title 20 O.S.2011 § 3001.1 provides:
No judgment shall be set aside or new trial granted by any appellate court of this state in any case ... on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

See , e.g. , Williams v. State , 1976 OK CR 225, 554 P.2d 842.

See also Nish v. Schaefer , 138 P.3d 1134, 1140 (Wyo. 2006) (bicyclists have the same rights as pedestrians to use crosswalks at intersections); and Lakewood v. El-Hayek , 142 Ohio Misc.2d 129, 872 N.E.2d 1005 (Ohio Mun. 2006) (a person's mere use of a wheeled device for transportation does not exclude that person from being a pedestrian when crossing from one sidewalk to another in a crosswalk).

We note that a finding of per se negligence does not preclude the application of comparative/contributory negligence principles as a defense. Simply put, a party charged with per se negligence for failure to erect barriers around a hole in the pavement may still argue that a pedestrian who fell in the hole did so because of the pedestrian's own negligence in looking at a handheld device while walking rather than looking ahead.