David Johns BRYSON, Appellant,

v.

Jon TILLINGHAST, Appellee.

No. 63997.

Supreme Court of Oklahoma.

Jan. 26, 1988.

Jim Pearson, Oklahoma City, for appellant.

John M. Perry III, Calvin W. Hendrickson, Pierce Couch Hendrickson Johnston & Baysinger, Oklahoma City, for appellee.

SIMMS, Justice:

Appellant, David Johns Bryson, appeals a decision of the District Court of Oklahoma County dismissing his lawsuit under 12 O.S.Supp.1987, § 2012(B)(6), for failure to state a claim upon which relief can be granted. For the reasons stated herein, we AFFIRM the decision of the district court.

Bryson was convicted of kidnapping, rape and sodomy. His conviction and seventy-five year sentence has been affirmed in a unanimous opinion by the Oklahoma Court of Criminal Appeals. *Bryson v. State*, Okl.Cr., 711 P.2d 932 (1985). After

his initial conviction in trial court, Bryson commenced this action against the present appellee for negligence in supplying certain information to the police which ultimately led to Bryson's arrest.

While committing a rape, Bryson was bitten by his victim on his penis. This bite temporarily disabled Bryson, allowing his victim to escape. Bryson sought medical care for his injury at a local hospital. Sometime after his initial visit, Bryson called the hospital complaining of pain and infection, and asking for a prescription. His attending physician was not present when Bryson made his telephone call. The Appellee, Doctor Jon Tillinghast, accepted the call for his associate who was Bryson's original physician. Doctor Tillinghast took the necessary information, and called in a prescription as Bryson had requested. Doctor Tillinghast had no further contact with Bryson beyond his acts in calling in the requested prescription.

Later, the appellee overheard some hospital employees talking about a request for information made by the Oklahoma City Police Department. The police were looking for a suspected rapist who had injuries similar to those for which Bryson had been receiving treatment. The appellee consulted hospital authorities, had someone consult with legal counsel for the State Medical Association, and talked to Bryson's attending physician about whether he was ethically permitted to report Bryson's call to the police. The appellee was informed by all concerned that they saw no objection in the appellee cooperating with the police department's request for information. The appellee reported the incident and Bryson was subsequently questioned by the police and arrested.

Doctor Tillinghast was not asked to testify at Bryson's criminal trial where the victim and other witnesses were able to conclusively identify Bryson as the rapist.

Appellant Bryson filed a civil action against this appellee just a few days before the decision in the appeal of his conviction was promulgated. Appellant alleged four separate theories: First, liability on the part of Doctor Tillinghast for an alleged breach of the doctor-patient privilege; Second, liability for breach of the implied protection from disclosure of criminal conduct in a contract for medical services; Third, liability arising out of the doctor's alleged violation of the licensing statute, 59 O.S. 1981, § 509, which makes a breach of confidence unprofessional conduct; and Fourth, punitive damages for the alleged breach of confidence.

Appellant presents a unique issue of first impression in this state: Whether a cause of action in tort lies for the alleged breach of the physician-patient confidential relationship under the facts of this case. More precisely, the issue on these facts is whether a subsequently convicted rapist may bring a civil suit for punitive damages against an informant merely because the informant is a medical doctor. We answer in the negative.

## I.

■ Appellant's first proposition is based on the evidence code, 12 O.S.1981, § 2503. He argues that the doctor-patient privilege is not restricted to trial testimony, that this statute should be extended to cover voluntary extra-judicial divulgence of information as well as trial testimony. This proposition was directly addressed by the Court of Criminal Appeals in appellant's criminal appeal. There, the Court stated:

"We note that Section 2503 recites a statutory *testimonial* privilege. It is not a privilege enacted to protect an accused from police investigation, and certainly was not designed to preclude police from obtaining voluntary information from physicians. The State has an interest in the protection of its citizens from violent acts, and to insure the swift apprehension of criminals who commit such acts. Applying this statute in the broad manner urged by appellant would serve as a cloak for crime. This assignment of error is accordingly without merit." *Bryson v. State*, supra, at 934.

We adopt the reasoning of the Court of Criminal Appeals as it applies to criminal cases. It is appropriate to note here that

some of the very authority appellant cites in his brief is in accord with this holding. See: *Schaffer. v. Spicer,* 88 S.D. 36, 215 N.W.2d 134 (1974); and, *Horne v. Patton,* 291 Ala. 701, 287 So.2d 824 (1974). However, in view of the public policy considerations hereinafter discussed, we find it unnecessary to address this issue as it may apply to civil cases.

## II.

Appellant's second proposition is likewise untenable. Here, he presents the argument that the courts should not create a "public policy exception" to this statutory privilege since the legislature has repeatedly failed to do so. Even if we were willing to extend the testimonial privilege to voluntary extra-judicial disclosures, which we will not do, virtually every authority appellant uses to support his proposition contains specific language adopting exactly that public policy exception. See, *Horne v. Patton,* supra; and *Hammonds v. Aetna Casualty & Surety Company,* 243 F.Supp. 793 (N.D.Ohio 1965). *Hammonds* is especially applicable to his case. Speaking to the issue of tort liability when a doctor makes an extra-judicial disclosure, the court stated explicitly that the privilege will not attach when the benefit of the divulgence "... will inure to the benefit of the public at large ..." *At 797.* Since the appellee's disclosure enabled the police to apprehend a suspected rapist and bring him to trial, the benefit of the Doctor's divulgence inured to the benefit of the public at large. Clearly, the public policy exception to the asserted privilege already exists.

## III.

Appellant's third proposition is that the doctor's report to the police constitutes a breach of contract. Bryson assumes, and we do not refute the assumption, that an implied guarantee of confidentiality exists when a doctor and his patient enter into a contract for medical services. However, this Court has spoken to public policy exceptions to his guarantee in another context. The general rule was stated by this Court in *Conine v. Leikam,* Okl., 570 P.2d 1156 (1977). In a case involving the unlawful sale of corporate stock, we stated: " 'Unlawful' as applied to agreements.... denotes they are ineffectual in law, for they involve acts which, though not positively forbidden, are disapproved by law and *are therefore not recognized as the ground of legal rights because they are against public policy.*" At 1159, (emphasis added) Imposing a contractual liability on this doctor whose assistance enabled the police to apprehend an accused rapist is against the strong public policy of this state and we refuse to recognize such a cause of action.

Citing the Oklahoma licensing provision which makes it unprofessional conduct for a physician to "willfully betray" a confidence to the detriment of a patient, appellant now argues that this provides a basis for civil liability. As his primary authority for this proposition, appellant cites *Humphers v. First Interstate Bank of Oregon,* 298 Or. 706, 696 P.2d 527 (1985). Again, appellant ignores the plain language used in the very opinion he cites as persuasive. The *Humphers* court was clear in its holding that the liability imposed on the doctor in that case for his disclosure did not rest on the licensing statute, but on other provisions in the Oregon code. Here, it is important to note the general purpose of licensing statutes. The statutes are created as a means of regulating professions by state agencies with particular expertise in that particular profession. In light of the fact that no official sanction has been levied against this appellee/doctor for his alleged breach, [indeed, no complaint has been filed] we are reluctant to find, as a matter of law, that a breach of medical ethics has occurred.

## IV.

Appellant's next proposition is directly tied to the preceding, and adds further support to our conclusion. Appellant argues that liability may be founded in the doctor's perceived breach of the Hippocratic Oath and the Principles of Medical Ethics. Indeed, these principles support Doctor Tillinghast's acts.

Principle 9 of the American Medical Association's Principles of Medical Ethics provide that a physician may not disclose a confidence "unless he is required to do so by law or unless it becomes necessary in order to protect the welfare of the individual or of the community." [American Medical Association Principles of Medical Ethics, Principle 9 (1957)]. We hold that appellee's disclosure was, as a matter of law, necessary to protect the welfare of the community. Further, it has been recognized that ethical standards are aspirational in nature and not enforceable by law. *Quarles v. Sutherland*, 215 Tenn. 651, 389 S.W.2d 249, 251 (1965).

In summary, no cause of action will lie for the disclosure in this case. And, this doctor's actions are protected from liability by an absolute common-law privilege based on this state's public policy.

The decision of the District Court of Oklahoma County dismissing appellant's case under 12 O.S.Supp.1987, § 2012(B)(6) is AFFIRMED.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER, OPALA and ALMA WILSON, JJ., concur.

SUMMERS, J., concurs in judgment.

KAUGER, J., concurs in result.